Alexander Del Giorno, J.
The above-entitled claim was tried before me on March 5 and 6, 1958, in the Court of Claims, Albany, New York.
The claim is for an alleged assault upon the claimant by a State trooper while on duty. The claim has not been assigned.
The claimant, age 25, married and employed by the Pepsi-Cola Distributing Agency as assistant vending machine manager, Troy, New York on April 19, 1956, finished work at 5:00 p.m., drove his car to Albany with his friend and coworker, Glenn Van Alstyne, as a passenger. Claimant had a 1952 Ford 2-door sedan. Glenn had loaned his own car the day previous to a friend of his who had not returned it. The trip to Albany was for the purpose of finding Glenn’s car. In Albany they did not find the car. They proceeded to Watervliet to look for man and car. They found the car in a side street with one flat tire. They proceeded into a nearby bar to find the friend. He was not there. Upon leaving, the friend entered. They had two drinks of beer. Claimant and Glenn then left, removed the flat tire from the car, had it fixed, put it back, and then, upon Glenn’s request, drove to East Greenbush where Glenn left his car with a mechanic friend, to repair a previous damage to Glenn’s car.
Claimant and Glenn then, being hungry, went nearby to the “ Barn ”, a bar and grill. It was now about 9:00 p.m. There they shot darts with another friend of the claimant who was found therein, had some potato chips and between 7 and 8 glasses of beer (Glenn) and 8 to 10 glasses (claimant). The two did not eat, other than some potato chips. They stayed at the “Barn” about one and one-half hours, then drove along Route 4-40 towards Rensselaer, intending to turn left at the Rensselaer Road or Third Avenue Extension.
From here on we face the two sides of our story. The claimant and his friend allege that he drove no faster than 65 miles per hour (maximum was 50 miles per hour) had lights on his car and met no traffic from the ‘ ‘ Barn ’ ’ to the Rensselaer road, a distance of some two miles, where he stopped his car and pulled to the side of the road. He said he had seen through *316 the rear view mirror the troopers’ car red dome light for about one-quarter mile behind him. He thought it was an ambulance and stopped to permit it to pass. At this intersection there are a gas station and a snack bar. There are lights along Route 4-40.
The State troopers testified that they were traveling south along Route 4-40 when they saw a car coming north, going about 40 miles per hour, and without any lights. They immediately continued some 50 yards to an intersection, made a “ U ” turn and started giving chase. Trooper Brady put on the red flasher light and blew the ear siren. At that moment, the claimant put on his lights and increased his speed to about 90 miles per hour. The chase continued for one and three-quarter miles at about 90 miles per hour, when the troopers’ car pulled abreast of claimant’s car which slowed down and finally came to a stop at the intersection indicated.
The claimant and his friend say that the troopers came alongside the car of claimant, said not a word, that trooper Brady opened the door, punched him, dragged him out, tore his shirt in the process, and when outside, while trooper La Pari stood by with his hand on the gun at his side, Brady hit him with his fists on the head and shoulder for four or five minutes. Claimant was then taken to the troopers’ car and sat on the back seat. One of the troopers sat with him and repeatedly struck him in the back of the head and struck him in the eye, calling him meanwhile “ a wise guy ”. Glenn said he saw the claimant unceremoniously pulled out of the car, but when claimant was standing outside he did not see him actually struck, but saw troopers ’ bodies move towards claimant whom he heard say “ ouch ”. He testified, further, that after the claimant was in the troopers’ car, a trooper came to him, told him to get out of claimant’s car and then searched the car. The trooper then said to him, “ Are you any more sober than your friend ”1 Glenn answered neither was drunk. Trooper then advised Glenn to follow them in claimant’s car to the home of a Justice of the Peace, which he did. Glenn said that on the way he could see through the rear window of the troopers’ car, the claimant being struck on the head repeatedly by a trooper. Glenn admitted that the troopers did not assault or otherwise molest him. He admitted that the troopers treated him like a gentleman.
The troopers both testified that when they approached the claimant’s car, Brady requested his driver’s license, which the claimant gave to him. Then Brady told the claimant he was under arrest and to come out of the car. He refused to accede *317 to two such requests. Then both troopers had to pull him out while claimant struggled, pulling back by holding onto the steering wheel. Outside he ceased his struggle, was placed in the back of the troopers’ car and taken to the home of a Justice of the Peace, who was not there. He was then taken to a second Justice, who was at home. He was there charged by Brady with speeding at 90 miles per hour and driving without lights. Claimant pleaded guilty to both charges, although, according to trooper La Pari, the claimant insisted he was going not more than 80 miles per hour. Neither claimant nor his friend complained to the Justice of the alleged assault.
Unable to pay his fine, claimant was confined to the Rensselaer jail until 3:00 a.m., when Glenn returned with claimant’s father, who paid the fine. The troopers, who have a blameless record, swore they did not strike claimant, but that they had to pull him out of the car to effect the arrest and restrain him.
The claimant and Glenn went to Dr. Bessy’s house, who examined him and prescribed no treatment. Then claimant took his friend Glenn home and returned to his own home. He felt pains in his head and shoulder. He lost one day’s work, out of a weekly salary of $56. The photo of claimant’s eye, taken six days later, shows the tiniest ‘ * mouse ’ ’ or discoloration under the eye.
Claimant’s wife confirmed the fact that when claimant came home at 4:00 a.m., he had a red marking under his eye, and she felt bumps on the back of his head and his shirt was torn. He also had a red bruise the size of a quarter on his shoulder. She put cold ‘packs on his eye, gave him aspirin to stop his trembling aud Pain. Next day his eye was black and blue but the swellingof dye and head was down.
Here wq^^fe, according to the record, two average good citizens pitnrMgainst two alert and good troopers. Their stories are diamet>^]*y opposed. We may inquire whether the injuries described 1hKie claimant were gratuitously inflicted or stubbornly sou^p by the claimant. The court believes that the troopers wt* out earning their bread and butter, doing their duty at theBne and “ hating ” no one. I am sure that they would have ®en happier if they had not met up with claimant. At 80 or 90 miles an hour their own lives were in danger. They do not relish that possibility of injury any more than any of us do. Their sworn duty requires they remain cool when citizens may be unruly, obstreperous or uncivil, but such duty also requires that once the necessity therefor has been established in their mind, they must effect the arrest which sometimes requires *318 the use of necessary force to accomplish just that. If some injury results therefrom through the agency of the offender or someone else, but non volenti on the trooper’s part, neither the trooper nor the State may he held accountable for such resultant injuries.
The court concludes that either 9 or 10 glasses of beer or 10 to 12 glasses of beer the claimant drank, had their effect. He may not have been intoxicated but it seems that he was recalcitrant and non-co-operative. His pleading guilty to the two charges made against him coupled with the fact that he made no complaint against the troopers to the Justice of the Peace, and adding thereto the important fact that his friend was neither touched nor molested by the troopers who treated him ‘ ‘ like a gentleman ’ ’ by his own admission, we have the solution which is in favor of the troopers.
The court holds, therefore, that the motion of the State to dismiss at the end of the entire case because of failure to prove the assault charges against the troopers by a fair preponderance of the evidence, upon which decision was reserved, must he granted, and the claim dismissed.
The above represents the decision of the court on the facts and the law pursuant to section 440 of the Civil Practice Act.
Enter judgment accordingly.